UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| I DIG TEXAS, LLC, ) | |
| ) | |
| Plaintiff/Counterclaim Defendant, ) | |
| ) | |
| v. ) | Case No. 22-CV-0097-CVE-JFJ |
| ) | |
| CREAGER SERVICES, LLC, ) | |
| and KERRY CREAGER, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| and ) | |
| ) | |
| CREAGER SERVICES, LLC, ) | |
| ) | |
| Defendant, Counterclaim ) | |
| and Third-Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| THOMAS MAREK and MARY MAREK, ) | |
| ) | |
| Third-Party Defendants. ) | |

## OPINION AND ORDER

Now before the Court are Defendant Creager Services, LLC and Kerry Creager's Motion for Summary Judgment and Opening Brief in Support (Dkt. ## 50, 104)[1] and Plaintiff and Third-Party Defendants' Motion for Summary Judgment and Opening Brief in Support (Dkt. # 54).  This case arises out of alleged misuse of copyrighted images, eventually leading to a dispute between I Dig Texas, LLC (IDT) and Creager Services, LLC (Creager) that resulted in false business reviews,

---

[1] Defendants filed an amended motion for summary judgment (Dkt. # 104) after the Court Clerk advised defendants that it would not substitute certain exhibits attached to the original motion (Dkt. # 50).  The amended motion does not include any additional arguments or legal authority and was filed for the purpose of filing redacted copies of certain deposition testimony.  See Dkt. ## 101, 103.

malicious e-mails, and mutual efforts to interfere with each other's business. IDT and third-party defendants Thomas Marek and Mary Marek seek summary judgment on Creager's and Kerry Creager's federal counterclaims of copyright infringement, inducement of copyright infringement, and violation of the Lanham Act, 15 U.S.C. § 1125. Dkt. # 54. IDT and the Mareks also seek summary judgment on defendants' state law counterclaims and third-party claims under the Oklahoma Deceptive Trade Practices Act, OKLA. STAT. tit. 78, § 51 et seq. (ODTPA), and for unfair competition. Creager asserts that IDT has not established that sharing an opinion about IDT's allegedly unfair or malicious business practices constitutes a violation of Oklahoma tort law or the ODTPA, and Creager and Kerry Creager seek summary judgment on IDT's exclusively state law claims against them.

I.

IDT and Creager are both in the business of selling skid steer attachments and other products, and both IDT and Creager maintain physical locations to sell their products, as well as offering their products for sale on a website. Dkt. # 54, at 7; Dkt. # 77, at 8. Creager markets and sells Montana post drivers that compete with the Texas post drivers sold by IDT. Id. Montana post drivers are manufactured in China, but IDT advertises that its Texas post drivers are manufactured in the United States. Id. IDT created an advertisement for its products using two images for which Creager later obtained a copyright registered with the United States Copyright Office, and the images depict the Montana post drivers sold by Creager. Dkt. # 18, at 16-17. The IDT advertisement displayed the two copyrighted images next to the phrase "Made in China" inside a red circle with a line drawn through the words. Dkt. # 54-6. The advertisement claimed that IDT manufactured its own products in the United States with "TRUE U.S. plate steel and red iron I-Beam," in contrast to the products

2

sold by Creager that were made in China. Id. IDT began publishing its advertisement using the Creager images on October 3, 2021. Dkt. # 18, at 18. Creager obtained copyrights for the images on October 12, 2021, but initially published the images in March and May 2021. Dkt. # 18, at 16. Creager states that it obtained the copyright of its images so that it could file litigation against IDT and its owners, Thomas and Mary Marek. Dkt. # 77, at 10. Creager's owner, Kerry Creager, believes that IDT's advertisement could mislead consumers into believing that IDT actually sells the products depicted in the copyrighted images. Dkt. # 54-3, at 8. Kerry Creager cannot identify any specific sales that Creager has lost as a result of IDT's advertisement. Dkt. # 54-3, at 11; Dkt. # 54-8, at 4.

The dispute over IDT's use of Creager's images was not the first dispute between IDT and Creager. In November 2020, Mary Marek sent an e-mail to Creager claiming that Creager was using IDT's logo in a post on Craigslist.com, and she asked Creager to remove the logo from its advertisement to avoid potential litigation. Dkt. # 104-1, at 2. Creager looked into the matter and advised IDT that it had obtained the "canned photos" from Google after paying a fee, and Creager asked IDT to provide evidence that it held a trademark of the disputed images. Id. at 4. Mary Marek responded that IDT had a common law trademark for the images, and the parties engaged in further argument about Creager's use of the images and IDT's alleged trademark. Id. at. 5-7. IDT chose to create a new logo and obtained a trademark for the new logo, and IDT did not file a lawsuit against Creager for trademark infringement. Dkt. # 104-2, at 43-44. On April 23, 2021, Mary Marek again contacted Creager and claimed that Creager had posted a false review about IDT on Google, and Mary Marek further claimed that Creager had defamed IDT in a Craigslist post. Dkt. # 104-3, at 2. Kerry Creager denied that he had posted a false review about IDT, and he accused Thomas

3

Marek of posting a false review about Creager. Id. at 3. Thomas Marek admits that he posted a review about Creager under the name "Karen Sideshow" alleging that Creager falsely advertised its products as "made in America," and the post promotes the Texas post driver sold by IDT. Dkt. # 104-4, at 2. Thomas Marek also admits that he posted additional reviews about Creager using other false identities. Dkt. # 104, at 9; Dkt. # 74, at 7.

In addition to the allegedly misleading advertisement, Creager claims that IDT contacted vendors who sell Creager's products and made defamatory statements about Creager. Kerry Creager alleges that Thomas Marek called Kurt Jenkins, the owner of Jenkins Iron and Steel (Jenkins), and falsely claimed that Creager was using an IDT logo in its advertising and that Kerry Creager had posted fake Google reviews about IDT. Dkt. # 54-3, at 9-10. Kurt Jenkins recalls that Thomas Marek made allegations that Kerry Creager had posted negative reviews about IDT on the Internet, but the evidence does not clarify whether Thomas Marek commented about Creager's alleged misuse of an IDT logo. Dkt. # 79-5, at 6-7. Jenkins did not stop doing business with Creager as a result of Marek's communication with Kurt Jenkins and Creager has not identified any financial harm resulting from this incident, but Kerry Creager believes that Thomas Marek harmed Creager's reputation with this vendor. Dkt. # 54-3, at 10. Thomas Marek forwarded an e-mail to MBW Inc. (MBW), a vendor of Creager, in which Kerry Creager made allegations that IDT engaged in unfair business practices, and Kerry Creager claimed that IDT was falsely representing that all of its products were made in the United States. Dkt. # 79-6. Marek told MBW that IDT was "looking forward to expanding our product line with MBW in 2022," but "this appears to be non-viable" as long as MBW was doing business with Creager. Id. at 6. Marek's communication with MBW appears to have had no effect on the business relationship between MBW and Creager, and MBW's

sales to Creager have not decreased as a result of Marek's actions. Dkt. # 54-3, at 10; Dkt. # 54-12, at 2. In January 2022, Thomas Marek sent an e-mail to Jeff DePalma of LJD Sales & Rental (LJD), a vendor working with Creager, claiming that Creager was using LJD's name in "defamatory advertising against my company," and Marek advised DePalma that LJD could be "tangled up in litigation." Dkt. # 54-14, at 2. As a result of Marek's e-mail, LJD reduced the amount of business it conducted with Creager until it could determine how the litigation between Creager and IDT was resolved. Dkt. # 54-13, at 7-8.

IDT copied two images from an advertisement posted by Creager and used the images in an advertisement for IDT that was posted on Craigslist.com. Dkt. # 104-5, at 25-27. Creager posted its own advertisement on Craigslist.com stating that "[s]ome south Texas skid steer attachment dealers copy (very poor copies . . .) other attachments and call them their own. That is the same thing we get mad at China for doing - having no morals or scruples, and making POOR QUALITY IMITATIONS!" Dkt. # 104-7. Creager accused the unnamed Texas dealers of copying a product made by Jenkins and passing off the product as an "innovative new design." Id. On January 7, 2022, Creager created a post for its Facebook page describing the "DESPICABLE ACTIONS OF TOM MAREK, OWNER OF [IDT]," and the post claimed that Marek had "sunk to a new low in his business practice." Creager claimed that Marek had contacted one of its vendors and offered to place a large order if the vendor would cease conducting business with Creager. Dkt. # 104-8. The vendor did not accept Marek's terms and rejected his offer, but Creager stated that it would be filing a complaint with the Federal Trade Commission (FTC) and the Texas Department of Commerce. Id. The post also references an unrelated lawsuit in which Marek was found to be in breach of a contract

5

involving the sale of agricultural land, and Marek was ultimately ordered to pay damages to the prevailing party. Id.

IDT entered a consignment agreement with Semper Fi Attachments & Equipment, LLC (Semper Fi), under which Semper Fi would receive a consignment fee for selling IDT's products. Dkt. # 104-14. Kerry Creager sent a letter to Clint Bates, the owner of Semper Fi, attempting to discourage Bates from doing business with IDT, and Kerry Creager accused Thomas Marek of "tak[ing] advantage of everyone." Dkt. # 104-13, at 2. Kerry Creager claimed that there was "no contract that you can devise that will prevent [Thomas Marek] from screwing you – and, it will happen within a year." Id. Kerry Creager proceeded to provide a list of Thomas Marek's allegedly unsavory business practices, and Kerry Creager claimed that Thomas Marek would eventually drive Semper Fi out of business. Id. at 3-4. On January 25, 2022, Kerry Creager sent a text message to Bates, owner of Semper Fi, in which he stated that Bates "got in bed with a snake" and Bates' recent bad decisions would "put [his] life in turmoil." Dkt. # 74-6, at 2. Kerry Creager referenced a "tax thing" involving Bates, which Bates interpreted as a threat by Kerry Creager to report Bates to the Internal Revenue Service (IRS) for tax evasion. Dkt. # 74-6, at 6; Dkt. # 54-7, at 9-11. IDT later reclaimed some of the items that were provided to Semper Fi on consignment, but Semper Fi still possesses approximately half of the items it received from IDT. Dkt. # 104, at 15; Dkt. # 74, at 9. Semper Fi subsequently left the business of selling skid steer attachments, which was a relatively new part of its business model, but Semper Fi still maintains a hydroseed and foam spraying business. Dkt. # 74-7, at 27-28. Bates' decision to stop selling steer skid attachments was impacted by his ongoing divorce. Dkt. # 51-1, at 8-9. On September 30, 2022, Kerry Creager sent a letter to Bates after learning that he may be called by IDT as a witness in this case, and the letter suggests that

Bates intends to give false testimony that is favorable to IDT. Dkt. # 74-10. The letter contains a veiled threat related to "sales taxes" and "referrals" that seems to relate to Kerry Creager's prior threats to report Bates for tax evasion. Id. at 2.

Creager accuses IDT of engaging in false advertising or unfair business practices based on IDT representations that its products are made in the United States. One advertisement for IDT includes the words "Made in USA" in front an American flag background. Dkt. # 18, at 21. Creager claims that the Texas post driver sold by IDT comes in a premium and economy model, and the economy model is wholly made in China. Dkt. # 18, at 22. According to Creager, the premium model is partially manufactured in the United States, but the power unit for the premium Texas post driver is manufactured in China and the product will not function without the power unit. Id. Kerry Creager believes that IDT's advertising creates the false impression that all of IDT's products are manufactured in the United States and, specifically as to the Texas post driver, the product uses a power source manufactured in China. Dkt. # 54-3 at 12-14. However, at least two advertisements posted by IDT specifically state that the power cell of the Texas post driver is manufactured in China, and the advertisements attempt to distinguish IDT's products from other distributors that sell products wholly made in China. Dkt. # 54-16, at 2; Dkt. # 54-17, at 2. IDT removed its "Made in USA" advertising from January to August 2022, and its on-line sales increased during that time period. Dkt. # 54-2, at 6.

IDT filed this case in Tulsa County District Court alleging claims under the ODTPA, as well as state law claims of tortious interference, unfair competition, and defamation against Creager and Kerry Creager. Dkt. # 2-1, at 9-15. The petition states that IDT is a citizen of Texas, and Creager is a limited liability company with its principal place of business in Oklahoma. IDT seeks

7

unspecified monetary damages and does not allege that the amount in controversy exceeds $75,000. Id. at 14. Creager filed counterclaims and a third-party complaint (the amended version of which are docketed as Dkt. ## 18, 24, 25) against IDT and the Mareks, alleging counterclaims of: copyright infringement (count I); inducement to commit copyright infringement (count II); unfair competition in violation of the Lanham Act, (count III); violation of the ODTPA (count IV); and unfair competition under state law (count V). Defendants removed the case to federal court on the ground that this Court has jurisdiction under 28 U.S.C. § 1338, which provides federal district courts with exclusive jurisdiction over claims of patent, copyright, and trademark infringement. The notice of removal does not suggest that the Court could exercise diversity jurisdiction over this case.[2]

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an

---

[2] The Court notes that the case could not have been removed to federal court on the basis of diversity jurisdiction, even if the parties had alleged that the amount in controversy exceeded $75,000. The parties are diverse but defendant Creager is a citizen of Oklahoma. Under 28 U.S.C. § 1441(b)(2), a case cannot be removed to federal district court on the basis of diversity jurisdiction "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." The case was properly removed based upon the presence of copyright infringement and Lanham Act claims, and the Court has supplemental jurisdiction over the parties' state law claims. However, the Court would not be able to exercise original jurisdiction over the state law claims based upon diversity of citizenship.

element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Turning to plaintiff and third-party defendants' motion for summary judgment (Dkt. # 54),[3] IDT argues that it is entitled to summary judgment on Creager's counterclaims of copyright infringement, inducement to commit copyright infringement, and unfair competition under the Lanham Act, as well as Creager's state law claims. IDT also argues that Creager's state law claims

---

[3] For ease of reference, the Court will refer to the movants IDT and the Mareks collectively as "IDT," and will refer to the counterclaims and third-party claims collectively as "counterclaims."

fail for the same reasons that Creager's Lanham Act claim fails. Creager responds that IDT did not use the copyrighted images for comparative advertising, and IDT cannot establish the affirmative defense of fair use. Creager also argues that IDT's "Made in USA" advertising was false and deceptive, and Creager can establish that it was harmed by IDT's false representations that its products were made in the United States. The Court will first address IDT's motion for summary judgment on the federal counterclaims.

**A.**

Creager alleges that IDT infringed its copyright by displaying two images of Creager's products in IDT's advertising, and IDT did not receive authorization from Creager to use the images. Dkt. # 77, at 23. IDT claims that it used the images as part of permissible comparative advertising contrasting IDT's and Creager's products, and IDT asserts that it can establish all of the required elements for the affirmative defense of fair use. Dkt. # 54, at 14.

To establish a claim of copyright infringement, a claimant must establish "(1) that it owns a valid copyright, and (2) that the [defending party] copied protectable elements of the copyrighted work." Paycom Payroll, LLC v. Richison, 758 F.3d 1198 (10th Cir. 2014) (quoting Mitel, Inc. v. Iqtel, Inc., 124 F.3d 1366, 1370 (10th Cir. 1997)). The second element requires a court to consider whether the defending party copied the claimant's work and, as a mixed question of law and fact, whether the copied elements are actually protected by a copyright. Id. In this case, the parties do not dispute that defendant owns a valid copyright to the images displayed in IDT's advertisements or that protectable elements of the images were copied by IDT. Instead, IDT raises the affirmative defense of fair use, which permits the copying or reproduction of a copyrighted work "for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use),

scholarship, or research . . . ." 17 U.S.C. § 107; Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 590 (1994). The statute provides four factors to consider when evaluating the affirmative defense of fair use:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.

As to the first factor, the parties agree that IDT's use of the copyrighted images was commercial in nature, but they disagree as to whether IDT used the images in permissible comparative advertising. The Supreme Court has expressly rejected the argument that use of a copyrighted work is presumptively unfair merely because the use is for a commercial purpose. Campbell, 510 U.S. at 584. The fact that the publication of a copyrighted work is commercial in nature may weigh against a finding of fair use, but a court must consider the context in which the copyrighted work is used and the purpose of the use. Harper & Row Publishers, Inc. v. Nation Enterprises, 471 U.S. 539, 562-63 (1985). The Supreme Court has declined to determine whether the good or bad faith of the actor has any role in the fair use analysis. Google LLC v. Oracle America, Inc., 141 S.Ct. 1183, 1204 (2021). IDT argues that it used the images in comparative advertising and this can be considered a proper purpose for using a copyrighted image. In Sony Computer Entertainment America, Inc. v. Bleem, LLC, 214 F.3d 1022 (9th Cir. 2000), the defendant

used screen shots from a video game copyrighted by Sony to show the difference when the game was played on a Sony PlayStation and an emulator on a personal computer. Id. at 1026. The Ninth Circuit noted that the FTC had found that comparative advertising is an important source of information to consumers when the advertising is "truthful and nondeceptive," and this type of advertising increases competition and reduces prices for consumers. Id. at 1027. In this case, it is clear that IDT used the images to compare its own Texas post drivers to the Montana post drivers sold by Creager, even if IDT's advertisement does not include a picture or image of its own product. Dkt. # 54-6. The comparison being drawn by IDT has less to do with the quality or features of the products but, instead, IDT is using the copyrighted images to suggest that customers should purchase IDT's products based on where the products were manufactured. Due to the type of comparison being made, the lack of images of IDT's products does not detract from the comparative nature of the advertising, and the Court finds that the purpose of IDT's use of the copyrighted images was for a permissible purpose to compare IDT's and Creager's products.

The next factor is the nature of the copyrighted work itself. The copyrighted works are simply photographs of the Montana post drivers sold by Creager, and the Court does not find that images are intended to be creative or artistic. Creager argues that "the process of creating the images regarding lighting, camera angle, and placement of the products" required creative judgment, and one of the images took advantage of the "objectively beautiful and widely revered" Oklahoma sunset. Dkt. # 77, at 26-27. There is nothing about the image suggesting the sunset depicted is unique to Oklahoma or that the photograph was even taken in Oklahoma, and the purpose of the images is merely to display Creager's products. The Court finds it unlikely that creative judgement played a substantial role in the creation of the images. The Court does not find that this factor

weighs for or against either party in terms of IDT's fair use defense. The third factor (amount of copyrighted work used by IDT) is relatively straightforward in this case, as IDT used full reproductions of Creager's copyrighted images in its advertisements.

The final and most important factor is the effect on the market for the copyrighted work caused by the actions of the alleged infringer. Sony Computer Entertainment, Inc., 214 F.3d at 1029 (describing market effect as the most important factor in the fair use analysis). This factor "requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also 'whether unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in a substantially adverse impact on the potential market.'" Campbell, 510 U.S. at 590. Creager argues that it must merely show that IDT's actions potentially had an effect on the market for or value of the copyrighted images, and Creager suggests that there is a presumption that a commercial use of a copyrighted work presumptively has an adverse effect on the value of the copyrighted work. Dkt. # 77, at 27-28. The Supreme Court has expressly rejected the application of a presumption of market harm in cases when the duplication or use of a copyrighted work was for a commercial purpose, and the Court will not presume that IDT's actions harmed the market for or value of the copyrighted images. Campbell, 510 U.S. at 591. The parties do not dispute that Creager possesses valid copyrights for the two images at issue. However, Creager has never attempted to license the images or copyright to a third party, and Creager has not obtained any independent valuation of the images.[4]  Dkt. # 54, at 8; Dkt. # 77, at 10. Creager has

---

[4]   Kerry Creager testified in his deposition that he personally believed that copyrighted images should be valued at $50,000 per image, but he "wouldn't sell these to the Mareks for a million dollars." Dkt. # 54-3, at 26-28. Creager does not argue that Kerry Creager's personal belief is sufficient to establish an independent value on the open marketplace for the copyrighted images, and the Court will not use Kerry Creager's testimony as evidence

13

produced no evidence that a marketplace actually exists for the copyrighted images or that the images have any independent value. Creager cites Balsey v. LFP, Inc., 691 F.3d 747 (6th Cir. 2012), for the proposition that potential harm to the value of the copyrighted work is sufficient to rebut an assertion of fair use. However, the plaintiff in Balsey produced evidence that there was a market for the copyrighted images at issue in that case and the value of the copyrighted images was potentially impaired due to the defendant's action. Id. at 760-761. Creager has come forward with no evidence that there is a marketplace for the copyrighted images or that the value of the images has been potentially impaired. The Court finds that this factor weighs in favor of a finding that IDT's use of the images constituted fair use.

Considering all of the statutory factors, the Court finds that IDT engaged in fair use of the copyrighted images, and summary judgment should be entered in favor of IDT on Creager's copyright infringement counterclaims (infringement and inducement to commit infringement). Comparative advertising is a permissible use of a copyrighted image in some circumstances, and Creager has come forward with no evidence suggesting that IDT's use of the images impaired the value of Creager's copyrighted work. Instead, it appears that Creager is simply upset that a competitor with whom it has an adverse relationship used the copyrighted images in advertising in attempt to cast Creager's products in a negative light. While Creager may disapprove of this type of use of images, IDT has established that it engaged in fair use of the copyrighted images. The Court's finding that IDT did not unlawfully infringe Creager's copyright also means that Thomas and Mary Marek cannot be held liable for inducing IDT to commit copyright infringement. IDT and

---

establishing the value of the images.

the Mareks are entitled to summary judgment on Creager's copyright infringement counterclaims (counts I and II).

**B.**

Turning to the Lanham Act counterclaim (count III), IDT argues that its advertising concerning the origin of its products was not misleading to consumers and, at most, statements that its products were "Made in USA" were ambiguous statements that are not actionable under the Lanham Act.[5]  Dkt. # 54, at 24-29.  Creager responds that IDT repeatedly made false claims that its products were manufactured in the United States, and Creager has come forward with evidence establishing that it was harmed by IDT's conduct.  Dkt. # 77, at 33-37.

> The Lanham Act prohibits any person who engages in commerce from using:
>
> any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities . . . .

---

[5] IDT also argues in its motion for summary judgment that other acts, such as IDT's allegedly false e-mails and communications with Creagers' suppliers or vendors, do not constitute unfair competition under the Lanham Act.  Dkt. # 54, at 21-23.  Defendants' response focuses solely on claims by IDT that its products originate in the United States, and the Court does not find that Creager is asserting a Lanhan Act claim concerning the other conduct referenced in IDT's motion for summary judgment.  Instead, IDT's communications with Creagers' venders and suppliers form the basis for Creager's state law claims and will not be addressed in the Court's analysis of Creager's Lanham Act claim.

15

15 U.S.C. § 1125. In order to succeed on a false advertising claim under the Lanham Act, the claimant must show that:

> (1) that [defending party] made material false or misleading representations of fact in connection with the commercial advertising or promotion of its product; (2) in commerce; (3) that are either likely to cause confusion or mistake as to (a) the origin, association or approval of the product with or by another, or (b) the characteristics of the goods or services; and (4) injure the plaintiff.

Sally Beauty Co., Inc. v. Beautyco, Inc., 304 F.3d 964, 980 (10th Cir. 2002). As to the first requirement, the Lanham Act "'encompasses more than literal falsehoods,' because otherwise, 'clever use of innuendo, indirect intimations, and ambiguous suggestions could shield the advertisement from scrutiny precisely when protection against such sophisticated deception is most needed.'" Cottrell, Ltd. v. Biotrol Int'l, Inc., 191 F.3d 1248, 1253 (10th Cir. 1999) (quoting American Home Prods. Corp. v. Johnson & Johnson, 577 F.2d 160, 165 (2d Cir. 1978)). However, the statement at issue must constitute a statement of fact to be actionable under the Lanham Act, meaning that the statement "(1) admits of being adjudged true or false in a way that (2) admits of empirical verification." Bimbo Bakeries USA, Inc. v. Sycamore, 29 F.4th 630, 644 (10th Cir. 2022).

The first and most important element of a Lanham Act claim is whether a defending party's statement or representation is actually false or misleading. The parties dispute whether the FTC's guidance concerning statements that a product is made in the United States apply to Creager's Lanham Act claim. The FTC has provided guidance that:

> A product that is all or virtually all made in the United States will ordinarily be one in which all significant parts and processing that go into the product are of U.S. origin. In other words, where a product is labeled or otherwise advertised with an unqualified "Made in the USA" claim, it should contain only a de minimis, or negligible amount of foreign content.

16

F.T.C. Enforcement Policy Statement on U.S. Origin Claims, 62 Fed. Reg. 63765, 63768 (Dec. 2, 1997). Some courts have determined that the FTC's guidance concerning "Made in the USA" claims should be given deference by courts, but not all courts agree that "Made in the USA" statements are sufficiently clear and unambiguous to constitute a statement of literal fact for the purpose of a Lanham Act claim. BenShot, LLC v. 2 Monkey Trading LLC, 2022 WL 1275604, *3-4 (E.D. Wis. Apr. 28, 2022) (giving great weight to the FTC standard); Honeywell Int'l Inc. v. ICM Controls Corp., 45 F. Supp. 3d 969, 987-88 (D. Minn. 2014) ("Made in the USA" statements were too ambiguous to support literal falsity claim under the Lanham Act even with reference to FTC standard).

Creager argues that IDT's claim that its Texas post driver is "made in USA" is literally false and constitutes false or deceptive advertising in violation of the Lanham Act. Dkt. # 77, at 31. The Court initially notes that certain of IDT's representations that at least one of its products originates in the United States is a clear and unambiguous statement that could give rise to a claim under the Lanham Act if the statement were false or misleading. Creager argues that IDT advertises that it provides "100% American Made Skid Steer Attachments," and it includes a "Made in USA" logo on its website and certain advertisements. Dkt. # 77-9; Dkt. # 77-10.[6] IDT's post on Craigslist.com

---

[6] The Court notes that the screen shots of advertisements provided by Creager are incomplete, and the Court will rely on the full advertisements attached to IDT's motion for summary judgment in reviewing the parties' arguments. See Dkt. # 54- 16; Dkt. # 54-17; Dkt. # 79-11; Dkt. # 79-12. Creager also provides incomplete copies of a Facebook post from 2019 and a screenshot that was apparently taken from IDT's website in 2019. Dkt. # 77-9; Dkt. # 77-10. The Court cannot tell from the context of the incomplete advertisements (Dkt. # 77-9; Dkt. # 77-10) whether the 2019 posts are actually misleading, and IDT has produced evidence that it did not even begin selling post drivers until June 2020. Thus, it is not clear that the "in commerce" element of a Lanham Act claim is implicated by the screenshots of alleged advertisements posted on the Internet by IDT in 2019.

17

states that its premium model is manufactured in the United States, except for the "imported nitrogen power cell," and IDT clearly states that its economy model is "fully Chinese built." Dkt. # 54-6. In another advertisement, IDT asks consumers if they "[w]ant a post driver MADE in USA," and IDT goes on to explain that its premium post driver is manufactured "in house," except for the imported nitrogen power cell.[7]

The Court finds that it is unnecessary to resolve the legal issue of the applicability of the FTC's guidance, concerning claims that a product is made in the United States, to claims arising under the Lanham Act because the Court is not dealing with vague or unsubstantiated claims that IDT's products are wholly manufactured in the United States. IDT's advertising provides specific facts to back up its claims that its premier Texas post driver is made in the United States, and IDT expressly informs consumers that part of the product originates from outside the United States. The FTC standard appears to apply to more general claims that a product is manufactured in the United States, and that is not the issue that has been presented by the parties in this case. IDT does represent that its premium post driver is manufactured in the United States, but IDT also informs consumers that a key component of the product is imported from China. Dkt. # 54-6; Dkt. # 54-16. While IDT's advertising does make general claims that it sells products "Made in USA," this representation is supported by specific disclosures about its products. A consumer viewing IDT's advertisements would be able to determine that the premium Texas post driver is manufactured in the United States

---

[7] IDT argues that general use of "Made in USA" statements or depictions of the American flag are too vague and ambiguous to constitute false advertising in violation of the Lanham Act. Creager's response to the motion for summary judgment focuses on specific statements made by IDT in its advertising, and the Court does not find that Creager is arguing that vague or general depictions of American flags or symbols violate the Lanham Act. Dkt. # 77, at 31-32.

except for the nitrogen power cell, and IDT informs consumers that the economy model is manufactured in China. The Court does not find that IDT's representations are false or misleading when viewed in the full context of IDT's advertisement, and Creager has failed to establish the first and most critical element of a Lanham Act false advertising claim. Therefore, it is unnecessary for the Court to proceed to the other elements of Creager's Lanham Act claim, and IDT and the Mareks' motion for summary judgment is granted as to the Lanham Act counterclaim (count III).

## IV.

The Court has disposed of all federal law claims remaining in the case, and defendants removed the case to federal court based on federal jurisdiction under 28 U.S.C. § 1338. Under 28 U.S.C. § 1367, the Court has supplemental jurisdiction over the parties' state law claims. However, district courts should decline to exercise supplemental jurisdiction when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). A district court should consider "the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness" when deciding whether to exercise supplemental jurisdiction over state law claims. Wittner v. Banner Health, 720 F.3d 770, 781 (10th Cir. 2013) (quoting Anglemyer v. Hamilton County Hosp., 58 F.3d 533, 541 (10th Cir. 1995)). Interests of comity and fairness typically favor allowing state courts to hear claims arising under state law absent "compelling circumstances" to the contrary. Ball v. Renner, 54 F.3d 664, 669 (10th Cir. 1995).

This case is set for jury trial in May 2023, and the parties have been actively preparing. However, the undersigned has not held a pretrial conference or any other hearing in this matter, and this Opinion and Order is the first substantive order the Court has entered in the case. The remaining claims arise under state law, and both plaintiff and defendants assert claims under the ODTPA. The

Court has found few decisions of Oklahoma courts interpreting this statute, and the parties are asserting novel arguments that social media posts or online advertising can constitute an unfair trade practice under Oklahoma law.  It is normally preferable for a district court to dismiss or remand in cases in which it has disposed of all claims over which it had original jurisdiction.  <u>Foxfield Villa Associates, LLC v. Robben</u>, 967 F.3d 1082, 1103 (10th Cir. 2020); <u>United States v. Botefuhr</u>, 309 F.3d 1263, 1274 (10th Cir. 2002); <u>Smith v. City of Enid by and through Enid City Comm'n</u>, 149 F.3d 1151, 1156 (10th Cir. 1998).  The Court recognizes the parties' ongoing trial preparation. However, the interests of fairness and comity favor remanding the case to state court for trial on the remaining state law claims, particularly in light of the novelty of the parties's arguments and the lack of Oklahoma judicial precedent interpreting the ODTPA.

**IT IS THEREFORE ORDERED** that Plaintiff and Third-Party Defendants' Motion for Summary Judgment and Opening Brief in Support (Dkt. # 54) is **granted in part** as to defendants' federal law claims.  The motion remains pending as to plaintiff and third-party defendants' request for summary judgment on defendants' state law claims for state court consideration.

**IT IS FURTHER ORDERED** that the Court declines to exercise supplemental jurisdiction over the remaining state law claims.  **The Clerk of Court is directed to remand this case to Tulsa County District Court.**  All remaining deadlines in this Court, including the April 27, 2023 pretrial conference and the May 15, 2023 jury trial, are hereby **stricken**.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment (Dkt. ## 50, 104) and the parties' motions in limine (Dkt. ## 51, 52) also remain pending for state court consideration.

**DATED** this 24th day of April, 2023.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE